O'CONNELL MACHINERY COMPANY, INC., Plaintiff,

v.

M.V. "AMERICANA" and Italia Di Navigazione, S.P.A. (d/b/a Italian Line), Defendants.

No. 82 Civ. 6341 (WK).

United States District Court, S.D. New York.

July 5, 1983.

As Amended Sept. 9, 1983.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy by George F. Chandler, III, New York City, for plaintiff.

Haight, Gardner, Poor & Havens by Vincent M. DeOrchis, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff brought an action against the Italian Line and the M.V. "AMERICANA," one of its vessels, for damages alleged to have been suffered by a generator transported on that ship from Genoa, Italy, to the port of New York. The case is before us on a motion to dismiss the complaint against the M.V. "AMERICANA." For reasons stated below, the motion is granted.

## BACKGROUND

Section 4 of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Pub.L. No. 94–583, 90 Stat. 2892, declares, in substance, that actions brought against a vessel owned by a "foreign state" to enforce a maritime lien, shall be deemed an *in personam* claim against the foreign state, provided certain procedures as to service and notice are followed. 28 U.S.C. § 1605(b).[1] The selfsame section also states that, in exchange for what is in practice a "long arm" statute against a foreign state, *see Geveke & Co. v. Kompania di Awa I Elektrisidat* (S.D.N.Y. 1979) 482 F.Supp. 660, 662–63 (Weinfeld, J.), attachment of the vessel for jurisdictional purposes will no longer be an accepted procedure.[2] In order to discourage the use of jurisdictional attachment, the statute specifically provides that the *in personam* action shall be forfeited for all time if the plaintiff arrests a vessel for purposes of filing suit and is not able to show that, at the time of such arrest, he was unaware that the vessel was owned by a foreign state. *See Kane, Suing Foreign Sovereigns: A Procedural Compass,* 34 Stan.L. Rev. 385, 409–10 (1982).[3]

---

1. Recovery under such "in personam" actions is, however, limited to the value of the vessel upon which the maritime lien arose. The statutorily created claim is, therefore, not a "pure" *in personam* action, exposing the defendant to unlimited liability.

2. The purpose of eliminating jurisdictional attachments was to ease the perceived international frictions which such attachments caused and, generally, to facilitate the conduct of foreign relations. *See* H.R. 94–1487, 94th Cong., 2d Sess., 26–27, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6625–26.

3. Professor Kane persuasively observes that

One might note that although [jurisdictional attachments] are improper in any type of action under the [FSIA], there is no comparable penalty [of forfeiture] outside the admiralty field. The [FSIA] accords admiralty [attachment] cases special treatment because there was a greater need to provide some enforcement mechanism to force attorneys to abandon the traditional use of in rem jurisdiction in that field. Also, the potential for causing friction with foreign states is enormous in admiralty because attachment ties up the ship, cargo, and crew, and so represents the power to immobilize assets worth

■ This action was filed on September 23, 1982. On several occasions during the subsequent two weeks, counsel for the Italian Line advised plaintiff's counsel that Italian Line was, indirectly, owned by the Italian Government and would therefore invoke the protection of the FSIA as an "agency or instrumentality of a foreign state." *See* 28 U.S.C. § 1603(b).[4] Thereafter and before the time to answer had expired,[5] plaintiff brought on, by order to show cause, a motion which sought to compel the defendant immediately to establish its entitlement to invoke the FSIA. We denied the motion as premature on the ground that its object was to circumvent the professional responsibility which 28 U.S.C. § 1605(b) placed on plaintiff's counsel: namely, to decide whether the intended arrest was proper and then to face the unpleasant consequence of dismissal should that judgment be proven incorrect. Plaintiff then sought a Writ of Mandamus to compel us to decide the issue raised by his order to show cause. The Writ was denied.

Undaunted, plaintiff arrested the M.V. "AMERICANA" upon its arrival in New York.[6] Before us is a motion to dismiss the *in personam* action against the vessel on grounds that it was improperly attached for jurisdictional purposes.

## DISCUSSION

Upon defendant's showing that Italian Line is an "agency or instrumentality of a foreign state," the foregoing would ordinarily require that we grant the motion to dismiss. *Jet Line Services, Inc. v. M/V Marsa El Hariga* (D.Md.1978) 462 F.Supp. 1165, 1174–78. Plaintiff seeks to avoid this result by arguing, *seriatim,* (a) that Italy has waived immunity from pre-judgment attachment; (b) that defendant has failed to provide sufficient proof as to the ownership of Italian Line; (c) that Italian Line is not entitled to FSIA protection; and (c) that 28 U.S.C. § 1605(b) is unconstitutional. All these arguments are without merit.

■ Plaintiff contends, first, that Article XXIV(6) of the Treaty of Friendship, Commerce and Navigation Between the United States of America and the Italian Republic, February 2, 1948, T.I.A.S. No. 1965,[7] waives defendant's immunity from pre-judgment attachment. To be sure, the protections of the FSIA—including that of immunity from pre-judgment attachment, 28 U.S.C. § 1609—may be explicitly waived by future treaties, 28 U.S.C. § 1610(d)(1), or by agreements, such as the one here at issue, in force at the time the FSIA was enacted. *See* 28 U.S.C. § 1609 ("Subject to *existing* . . . agreements . . ."). However, the "waiver of immunity from prejudgment attachment [must] be *explicitly* made . . ." *S & S Machinery Co. v. Masinexportimport* (2d Cir.1983) 706 F.2d 411, 416 (emphasis in original). Plaintiff relies solely on *Libra Bank Ltd. v. Banco Nacional de Costa Rica*

millions, irrespective of the amount of the claim involved. Kane, *supra,* at 410, n. 126.

4. It is, of course, apparent why defendant would wish to give such notice; namely, to insure that, in the event of improper jurisdictional attachment, plaintiff could not defeat the penalty of forfeiture by claiming that it was "unaware" that the ship was, in fact, owned by a foreign state. Plaintiff has repeatedly "charged" defendant with precisely such objective. We fail, however, to see grounds for protest: this is squarely what the purpose and the language of the FSIA invite defendant's counsel to do.

5. "Sovereign immunity" is a *defense. See, e.g., Castro v. Saudi Arabia* (W.D.Tex.1980) 510 F.Supp. 309, 312.

6. Plaintiff did not, strictly, arrest the vessel. A letter of undertaking issued by a P & I Club was posted by Italian Line to avoid the inconvenience of an arrest. We regard the posting of the letter of undertaking as the equivalent to an arrest.

7. The relevant language reads:

No enterprise of either High Contracting Party which is publicly owned or controlled shall, if it engages in commercial, manufacturing, processing, shipping or other business activities within the territories of the other High Contracting Party, claim or enjoy, either for itself or for its property, immunity therein from taxation, from suit, from execution of judgment, or from *any other liability* to which a privately owned and controlled enterprise is subject therein. (Emphasis added.)

(2d Cir.1982) 676 F.2d 47, for the proposition that the words "shall [not] ... claim ... immunity ... *from any other liability*" in the U.S.-Italy treaty indicate such explicit waiver of immunity as to pre-judgment attachment. Our Court of Appeals has recently held, however, that *Libra Bank* may not be so read and, therefore, that the words "from any other liability" do not—in and of themselves—operate as the required waiver. *S & S Machinery, supra,* 706 F.2d 411 (dealing with similar language in a treaty between the United States and Romania). Plaintiff has offered no more than his reliance on *Libra Bank*[8]; accordingly, his first contention must fail.

█ Plaintiff next argues that insufficient proof has been presented to support defendant's contention that Italian Line is an "agency or instrumentality" of the Republic of Italy. We have before us, however, the affidavit of Gerardo Carante, "Counselor of Commercial Activities of the Republic of Italy" and "chief officer of the Commercial office at the Embassy of the Republic of Italy," describing the ownership of Italian Line. This affidavit, executed on the letterhead of the Italian Embassy in Washington, states that the majority of the shares of Italian Line is owned by FINA-MARE, a "subdivision of the Instituto per la Riconstruzione Industriale ("IRI"), a government entity which coordinates the management of Italian government enterprises. IRI's annual budget and plans, in turn, are approved by a member of the Italian Cabinet and, ultimately, submitted to the Parliament. *See* Carante's Affidavit ¶¶ 4–8. In our view this establishes that Italian Line is, indeed, an "agency or instrumentality of a foreign state," as defined in 28 U.S.C. § 1603(b). *See also* H.R. 94–1487, 94th Cong., 2d Sess., 15–16, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6613–14. "Statements of foreign officials ... have been accorded great weight in determining whether an entity is entitled to claim the protection of the FSIA." *S & S Machinery, supra,* at 415 (citing with approval *Yessenin-Volpin v. Novosti Press Agency* (S.D.N.Y.1978) 443 F.Supp. 849, 854). As was also the case in *S & S Machinery,* "[plaintiff] failed to rebut any of this persuasive evidence, arguing instead that more was required to prove agency or instrumentality status." *Id.* Plaintiff's insistence that "more" be provided goes, in fact, to the *form* of defendant's submission, rather than to its contents. These demands are without merit.[9] We have before us an

---

**8.** Shortly after *S & S Machinery* had been decided, plaintiff submitted a supplemental brief contending, in substance, that the words "for its property" which appear in the U.S.-Italy treaty, *see* note 7, *supra,* but do not appear in the U.S.-Romania agreement at issue in *S & S Machinery,* rendered that opinion inapposite to the situation at bar. This argument is without merit. The question here is not "*What* is immune from pre-judgment attachment?" but "What *type* of attachment do the words 'other liability' cover?" As to the latter question, *S & S Machinery* is as applicable to the reading of the U.S.-Italy treaty as it is to the interpretation of the U.S.-Romania agreement at issue in that case. To the extent that plaintiff's argument may be read as suggesting that *S & S Machinery* is inapplicable to *in rem* actions, it is also unpersuasive. The concomitant of an *in rem* action is a jurisdictional (pre-judgment) attachment, to which the teachings of *S & S Machinery*—inasmuch as they instruct us to find consent to pre-judgment attachments only where it is *clearly* expressed—are fully applicable. Moreover, plaintiff offers nothing of substance to support its interpretation of the purpose of the U.S.-Italy agreement. We note that

defendant's rejoinder to the effect that the result advocated by plaintiff would be at odds with the FSIA, also misses the mark: the issue is the purpose of the *treaty,* not that of the FSIA.

**9.** Plaintiff argues, in substance, that "authentication" is required because there is no indication that the Italian government is "aware" of Signor Carante's "involvement." Plaintiff's Memorandum in Opposition at 5. In oral argument plaintiff went so far as to suggest that the claim of immunity was, in fact, a ruse and that, eventually, the Italian government would disclaim any involvement or relation with the defendants. *See also* Plaintiff's Memorandum in Opposition at 7 ("it is alleged that the defense [of sovereign immunity] is not being raised by the government but by a private party"). There is nothing before us, however, to substantiate the bizarre contention that the claim of immunity is no more than a swindle to dissolve the attachment and, thus, to deprive plaintiff of the means to recover on a subsequent judgment. Had plaintiff proceeded with an attachment (as the FSIA commands) and

affidavit substantially more explicit than the—by comparison—conclusory remarks submitted in *Novosti Press, supra,* 443 F.Supp. at 854 ("[defendant] was an instrumentality of the [government]"), cited with approval in *S & S Machinery, supra,* at 414. Accordingly, plaintiff's second argument in opposition must also fail.

■ Third, plaintiff contends that, in any event, Italian Line is not entitled to protection under the FSIA because it is not an "agency or instrumentality of a foreign state." Whereas it is conceded that IRI may qualify as a "foreign state," plaintiff argues that the chain of ownership so far removes Italian Line from direct government control as to make it "'too remote' to be considered as a 'foreign state'." Plaintiff's Memorandum of Law at 8–9. This argument is without merit. It rests on scant and inapposite precedent[10] and boils down to the red herring that "what [Italian Line] requests this Court to do is ignore its corporate form..." *Id.* at 9. The FSIA specifically provides that "corporate form" —in and of itself—be immaterial to the relevant determination. *See* 28 U.S.C. § 1603(b)(1). Accordingly, we conclude

that Italian Line is indeed an "agency or instrumentality" of the Republic of Italy as defined in 28 U.S.C. § 1603(b). *See also* H.R.Rep. No. 94–1487, 94th Cong., 2d Sess., 15–16, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6613–15 (shipping line suable in its own name as a specific example of "agency or instrumentality").

Finally, it is contended that the curtailment of pre-judgment attachment is unconstitutional. The substance of plaintiff's argument is that a statute may not eliminate "traditional" *in rem* actions—which existed at the time the Constitution was adopted— because Article III extends the judicial power of the United States to all cases in admiralty. Accordingly, the FSIA infringes on the constitutional grant of admiralty jurisdiction. The major premise implicit in plaintiff's argument is that an action against a sovereign is an action in "admiralty" when it is of a maritime nature. We have been offered nothing to support this proposition. Indeed, such brief review as we have made suggests that suits against a sovereign are outside constitutionally granted power and, in particular, out-

had his (now unsupported) fears that the sovereign was "playing possum" been realized, a Court could ultimately decide what would be the extent to which the commercial properties of any party to the fraud could be subject to post-judgment execution. *See* 28 U.S.C. § 1610(a) and (b); *S & S Machinery, supra,* at execution). The peculiar posture of this case— i.e., its viability in spite of our dismissal of the statutory *in personam* claim, *see* "conclusion," *below*—allows us the same inquiry, should it become necessary. *See* Fed.R.Civ.P. 54(b).

**10.** Plaintiff relies on *Standard Oil v. Starks* (7th Cir.1975) 528 F.2d 201 for the argument that "if the United States Postal Service is subject to garnishment ... then a foreign corporation should be treated similarly." Plaintiff's Memorandum of Law at 9. Without investigating the logic of this argument, we need only observe that the Postal Service's subjection to *post-judgment* garnishment of *its employees'* wages, was predicated in that case on an explicit finding that immunity had been waived. *Id.* at 202. A finding that Congress has implicitly waived immunity as to the Postal Service has no bearing on the extent to which it might have done

so under the FSIA. Plaintiff also refers us to *Edlow International Co. v. Nuklearna Elektrarna Krsko* (D.D.C.1977) 441 F.Supp. 827, for the proposition that if an institution is "'virtually free of direct government control' then it cannot be considered to be an agency or instrumentality of the foreign state." Plaintiff's Memorandum at 9. Apart from the absence of evidence to contradict the submissions detailing the extent of government control of Italian Line, we observe that in *Edlow* it was *plaintiff* who insisted, for jurisdictional reasons, that the defendant was an "agency or instrumentality" of a foreign (socialist) state; immunity was not the issue. Furthermore, in finding that the defendant was not such instrumentality, the judge found it necessary to discuss the issue of "control" in rejecting as insufficient plaintiff's *sole* argument that "all property under a socialist system ... is subject to the ultimate ownership and authority of the state." *Edlow, supra,* 441 F.Supp. at 831. This *presumption* is not at issue here and, in any event, the evidence of government ownership and control in this case goes well beyond the naked presumption offered in *Edlow*.

side the scope of traditional admiralty jurisdiction.[11]

■ Under English law the jurisdiction of all courts derived, ultimately, from the Crown, proceedings ran in the King's name, see 10 W. Holdsworth, A History of English Law 414–17 (1938), and the sovereign could not be sued in his court without consent. See 9 W. Holdsworth, supra, 8–39 (1926). The comparable principle of "sovereign immunity" was also adopted by American law. See Briggs v. The Lightboats (1865) 93 Mass. (11 Allen) 157 (thorough review of sovereign immunity in old English and American law). We have found nothing to suggest either that, at the time the Constitution was adopted, the Court of Admiralty was otherwise empowered to entertain suits against the sovereign, see 5 W. Holdsworth, supra, 125–29, 137–39, 143 (3d ed. 1923); T. Plucknett, A Concise History of the Common Law 657–664 (5th ed. 1956), or that American courts viewed admiralty jurisdiction as comprehending such actions. See, e.g., 1 Kent, Commentaries on American Law *354–*380; United States v. Lee (1882) 106 U.S. 196, 209, 1 S.Ct. 240, 251, 27 L.Ed. 171. In fact, the Supreme Court first articulated the doctrine of sovereign immunity in a maritime case involving the arrest of a foreign man-of-war, The Schooner Exchange v. M'Faddon (1812) 11 U.S. (7 Cranch) 116, 3 L.Ed. 287, and specifically declared that the Constitution of the United States granted no jurisdiction over the foreign sovereign there involved. Id. at 123. It has therefore been axiomatic that, where the defendant is a sovereign, it is immaterial that the action be of a maritime nature—there is no subject matter jurisdiction, except as granted by (implicit or statutory)

consent. Cf., e.g., G. Gilmore & C. Black, The Law of Admiralty §§ 9–12, 11–11 (2d ed. 1975) (sovereign immunity may bar recovery against the sovereign). Therefore, it cannot be said that admiralty jurisdiction encompassed suits against a sovereign, even if the actions were of a maritime character. Cf. McElrath v. United States (1880) 102 U.S. 426, 440, 26 L.Ed. 189 (suits against the sovereign are not at "common law" for purposes of right to jury trial); United States v. Sherwood (1940) 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (same); Glidden Co. v. Zdanok (1962) 370 U.S. 530, 572, 82 S.Ct. 1459, 1484, 8 L.Ed.2d 671 (same).

■ Inasmuch as suits against a sovereign are subject to its consent, the correlative power generally to condition such consent—in the maritime context or otherwise —is, by now, an established principle. See, e.g., Szyka v. Secretary of Defense (2d Cir. 1975) 525 F.2d 62, 65; Roberts v. United States (9th Cir.1974) 498 F.2d 520, 525. The curtailment of the right to proceed in rem is one such proper limitation.

The foregoing observations can best be illustrated in this context by reference to the Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 741–52. It provides, in relevant part, for the elimination of the right to arrest United States vessels and for the substitution of "an equivalent remedy in personam [against the United States] for the [eliminated] right in rem against the vessel." Schnell v. United States (2d Cir.) 166 F.2d 479, 481, cert. denied (1948) 334 U.S. 833, 68 S.Ct. 1346, 92 L.Ed. 1760. See also 46 U.S.C. §§ 741–42; Szyka v. Secretary of Defense, supra, 525 F.2d at 65, n. 4.[12] This is precisely the restriction which,

11. In light of the basis of our ruling we need, therefore, not consider the validity of plaintiff's "minor" premise, namely whether the elimination of the right to proceed in rem—which speaks to jurisdiction over the res—would, otherwise, constitute a curtailment of admiralty subject matter jurisdiction.

12. The SIAA was originally enacted to relieve the United States of the inconvenience caused by Supreme Court interpretations of a previous

statute, the Shipping Act of 1916, which interpretations resulted in government vessels being subject to in rem proceedings and, thus, to arrest. Its later amendments were intended to bring, by statute, all "admiralty" claims against the United States within the jurisdiction of the District Courts. Kelly v. United States (2d Cir. 1976) 531 F.2d 1144, 1148–49. It is clear that the SIAA is—as is the FSIA—an immunity-waiving statute. Nelson v. United States (9th Cir.1980) 639 F.2d 469, 473.

as enacted by the FSIA[13], plaintiff contends is beyond the power of Congress to impose. Yet this particular SIAA restriction has never been questioned as improper, *Schnell v. United States, supra,* 166 F.2d at 481; *Eastern Transport Co. v. United States* (E.D.N.Y.1951) 98 F.Supp. 36, 38 (exemption from arrest merely restores immunity taken away by another statute) and, indeed, none of the several restrictions under the SIAA has been subjected to serious judicial challenge. *See Szyka v. Secretary of Defense, supra,* 525 F.2d at 62 (upholding constitutionality of SIAA); *Roberts v. United States, supra,* 498 F.2d 520 (same). Plaintiff has suggested nothing to explain why Congress may not impose precisely the same limitation under the FSIA which for more than sixty years it has been able to require under the SIAA.[14]

## CONCLUSION

For the foregoing reasons the *in personam* action created by the FSIA is hereby DISMISSED. We observe, however, that—unlike the situation in *Jet Line Services, supra*—the practical consequence of such dismissal is, in this case, insignificant. Defendant has conceded in oral argument that the separate *in personam* action against Italian Line arising out of the bill of lading *contract* and in which jurisdiction is predicated on the presence of Italian Line in New York, continues unaffected by this dismissal. *Cf. Velidor v. L/P/G Benghazi* (3d Cir.1981) 653 F.2d 812, 817–19.

SO ORDERED.

**13.** The similarity in the schemes under the SIAA and the FSIA is not likely to have been coincidental. *See* H.R. No. 94–1487, 94th Cong., 2d Sess., 27, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6626.

**14.** The SIAA does not include a forfeiture provision upon improper arrest. Plaintiff has consistently argued, however, that it is the curtailment of *in rem* actions which renders the FSIA unconstitutional, not its forfeiture provision. As to the former, the SIAA and the FSIA are indeed similar.