**OUTBOUND MARITIME CORPORATION,**
**Plaintiff,**

v.

**P.T. INDONESIAN CONSORTIUM OF CONSTRUCTION INDUSTRIES and ICCI/AME Joint Venture, Defendants.**

**No. 83 Civ. 8403 (KTD).**

United States District Court,
S.D. New York.

Dec. 22, 1983.

Poles, Tublin, Patestides & Stratakis by Alan Van Praag, William J. Brady, III, New York City, for plaintiff.

White & Case by Edna Sussman, Richard Sypher, New York City, for defendants.

Buckley, Kremer, O'Reilly, Piper, Hoban & Marsh, by James G. Marsh, Mineola, N.Y., for Marine Midland Bank.

### MEMORANDUM DECISION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff Outbound Maritime Corporation ("Outbound") filed a complaint in admiralty against Defendants P.T. Indonesian Consortium of Construction Industries ("ICCI") and ICCI/AME Joint Venture ("JV") claiming $1,455,762.39 in damages for breach of an oral maritime contract. At the filing of the complaint, plaintiff, pursuant to Rule B(1) of the Supplemental Rules of Certain Admiralty and Maritime Claims, attached an account belonging to defendants at the Marine Midland Bank in New York. Outbound is a corporation organized under the laws of New York and acts as a non-vessel owning common carrier ("NVOCC"). ICCI is a corporation organized under the laws of Indonesia and owns a majority ownership interest in JV. The matter is presently before me on defendants' motion, by way of order to show cause, to vacate the attachment.

For the purposes of this motion only, I will assume that plaintiff on June 2, 1983

entered into an oral contract with ICCI to ship various cargoes from New York to Saudi Arabia as alleged in plaintiff's complaint. In connection with the contract, defendants procured a letter of credit from the Marine Midland Bank in the amount of $1,500,000 for the benefit of plaintiff. During the course of plaintiff's performance under the contract, plaintiff presented several sight drafts against the letter of credit all of which were honored, leaving a balance of $1,455,762.39 on the letter. In September of 1983, defendants notified plaintiff that they would no longer accept shipments under the contract and that plaintiff's damages would be the balance remaining on the letter of credit. Plaintiff filed this complaint in November seeking damages and attaching defendants' letter of credit at Marine Midland Bank which, in turn, apparently asserted a banker's lien against the defendants' operating account. Defendants, on December 7, 1983, requested, by order to show cause, that the attachment of the Marine Midland Bank account be vacated.

I heard argument on defendants' motion to vacate the attachment on December 8, 1983. Defendants contend that because this action is not properly within the admiralty jurisdiction of the court, I am without subject matter jurisdiction and the attachment is improper. Specifically, defendants argue that the activities of Outbound as a freight forwarder constitute acts preliminary to a maritime contract and do not give rise to admiralty jurisdiction. Defendants further raise the affirmative defense of sovereign immunity. Defendants contend that ICCI was nationalized by a proclamation of the Indonesian government on May 5, 1983 and that its private shares were effectively transferred to the government on June 11, 1983. In support, defendants present the affidavit of Koko Widayatmoko, President of ICCI, which states that ICCI is a wholly-owned corporation of the Republic of Indonesia, and an unauthenticated translated version of the May 5th Presidential Proclamation.

At the hearing, I reserved decision on the issues and directed defendants to submit further documentary evidence of the nationalization and to address the question of whether sovereign immunity is a defense if the defendant was not sovereign at the time the contract was formed. In subsequent papers, defendants present the affidavit of the Consul General of the Republic of Indonesia. Because I find that this action properly lies in admiralty and that defendants have failed to establish their claim of immunity, I will not address the question of whether defendants had to have been immune at the time of contracting in order to avail themselves of the defense.

### A. *Admiralty Jurisdiction*

There is no question that this matter properly lies in a court of admiralty. Defendants argue that plaintiff's status as a non-vessel owning common carrier makes plaintiff simply a freight forwarder, and thus the contract between the two parties is not a maritime contract. In focusing on plaintiff's status, defendants miss the key issue. As the Second Circuit recently stated in finding that a lease for the sale of containers fell within the admiralty jurisdiction of the court, the inquiry solely concerns the nature of the contract. *CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 379 (2d Cir. 1982). The question is whether the contract "relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment, ... [or] to one for the furnishing of services, supplies or facilities to vessels ... in maritime commerce or navigation." *Id.* (citations omitted).

In this case, the oral contract, as evidenced by the letter of credit, required the transportation of cargo from the United States to Saudi Arabia. That the parties intended to transport the goods by way of ocean carriage is clear from the terms of the letter of credit. The letter included the payment of ocean freight and port clearance charges. Moreover, plaintiff issued bills of lading and filed a tariff covering the contract with the Federal Maritime

Commission. There is no doubt in my mind that the contract is a maritime contract over which I have admiralty jurisdiction.

### B. *Foreign Sovereign Immunities Act*

■ The Foreign Sovereign Immunities Act generally protects a foreign state and its instrumentalities from prejudgment attachment. 28 U.S.C. § 1602 *et seq.* As an affirmative defense however the entity claiming the protection of the statute has the burden of demonstrating, *inter alia,* that it falls within the statutory definition of a "foreign state" or that it constitutes an entity "a majority of whose shares or other ownership interest is owned by a foreign state." 28 U.S.C. § 1603. Once a defendant presents prima facie evidence of this, the burden shifts to plaintiff to demonstrate that the Act does not apply. *Alberti v. Empresa Nicaraguense De La Carne,* 705 F.2d 250, 255 (7th Cir.1983); *Jet Line Services Inc. v. M/V Marsa El Hariga,* 462 F.Supp. 1165, 1171 (D.Md.1978).

In this case, ICCI bears the burden of producing evidence to establish its claim of sovereign immunity. At the December 8, 1983 hearing, defendants presented only the affidavit of an officer of ICCI and a translated version of a May 5, 1983 Indonesian Presidential Proclamation purportedly nationalizing ICCI. The affidavit merely states in conclusory terms that ICCI is wholly owned by the Republic of Indonesia. I cannot credit the affidavit of the officer of the ICCI since it does not state the underlying facts of nationalization nor is it made by an official of the Republic of Indonesia on whose behalf defendants seek to invoke immunity. The translation of the asserted Proclamation contains numerous handwritten corrections and is not authenticated. While I intentionally withheld this decision to give defense counsel every opportunity to submit competent evidence of the May 5th Proclamation, counsel has produced nothing but this poor copy, which is so bad that the effective date of the Proclamation, i.e., the date of payment by the Republic of Indonesia to the private shareholders, is not clear. As such, I cannot place much evidentiary value on the proffered submission.

I directed counsel to submit competent evidence of the claim of sovereign immunity which necessarily would include the Proclamation, its effective date and further evidence of the interest of the Republic of Indonesia in ICCI. In response, counsel has submitted the affidavit of the Consul General of the Republic of Indonesia sworn to on December 9, 1983 which now forms the only support for defendants' claim of immunity. This affidavit simply is not enough. *See Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes,* 336 F.2d 354, 359–358 n. 7 (2d Cir.1964), *cert. denied,* 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965) (affidavit of Spanish Consul in New York not sufficient to raise defense of sovereign immunity); *Civil Aeronautics Bd. v. Alitalia-Linee Aeree Italiane,* 328 F.Supp. 759, 761 (E.D.N.Y.1971) (claims of immunity should be presented through United States Department of State).

The affidavit in itself is confusing. It recites that part of defendant ICCI was privately owned but apparently that arrangements were made to transfer all private interest to the government. It is unclear whether this transfer was ever effectuated. It is unclear when it was done, if ever. The defendant JV is not even mentioned.

The means of raising a claim of sovereign immunity is fairly well known. *See generally,* 48 C.J.S.2d *Intern'l Law* § 52 (1981); 45 Am.Jur.2d § 54 *Intern'l Law* (1969). The failure of the counsel for the defendants to submit anything from the United States Department of State or the Indonesian Embassy is simply amazing. Under the circumstances, I find that the single affidavit presented in support of defendants' claim of immunity is simply insufficient to make out a prima facie claim of sovereign immunity. The question of the imposition of Rule 11 sanctions against defense counsel is held in abeyance pending further developments.

Accordingly, I find that defendants' motion to vacate the attachment at this time must be denied.

SO ORDERED.