KAO HWA SHIPPING CO., S.A., Plaintiff,

v.

CHINA STEEL CORPORATION, Defendant.

No. 91 Civ. 7788 (SWK).

United States District Court, S.D. New York.

March 23, 1993.

Mahoney & Keane by Edward A. Keane and Thomas Lancia, New York City, for plaintiff.

Burlingham Underwood by Herbert M. Lord, Lizabeth L. Burrell, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this admiralty action, defendant China Steel Corporation ("CSC") moves, pursuant to Rules 60(b)(1) and 60(b)(4) of the Federal Rules of Civil Procedure, for an order vacating a default judgment signed by the Court on May 7, 1992, and entered on May 13, 1992, and dismissing the complaint. For the reasons that follow, CSC's motion is granted, the default judgment is vacated, and the action is dismissed.

### BACKGROUND

The following facts, unless indicated otherwise, are not disputed by the parties. On July 13, 1989, CSC, a corporation created under the laws of the Republic of China ("ROC" or "Taiwan"),[1] with its principal office in Taiwan, sold 16,500 MT of Metallurgical Coke Breeze to Specific Commercial Corporation ("Specific"), a Taiwanese company. The material was to be divided into three shipments of 5,500 MT each. CSC was paid by an irrevocable letter of credit issued by a Taiwanese bank. Spacific took delivery of the first two shipments in Kaohsiung, Taiwan, and delivered them to third parties in Indonesia. CSC delivered the third shipment to Spacific in Kaohsiung on or about November 18, 1989. Spacific sold the third shipment to MCCI Corporation, a Philippine company, and chartered the M.V. Mahan or a substitute Panamanian flag vessel from Sun Rung Maritime Company, Ltd. to carry the shipment from Taiwan to the Philippines. On November 1, 1989, plaintiff's vessel "M.V. KAO HWA III" was substituted as the performing vessel.[2] In accordance with the letter of credit, CSC received payment for the third shipment in Kaohsiung on or about November 30, 1989.

According to the complaint in this matter, due to the hazardous nature and high moisture content of the Metallurgical Coke Breeze shipped by CSC, CSC's failure to provide information regarding the moisture limit of the cargo, and the negligent loading of the vessel by CSC, the vessel "M/V KAO HWA III" and certain of its officers and crew were lost at sea on or about November 20, 1989. As a result, plaintiff commenced the instant action, as well as an action in New York County Supreme Court (the "state case"), seeking four million dollars for loss of its vessel.

Subsequent to the action's commencement, the Court held two pretrial conferences on January 24 and February 21, 1992, at which CSC failed to appear.[3] CSC also failed to file an answer or other response to the complaint. Accordingly, plaintiff moved for a default judgment. Subject to the Court's instructions, on May 5, 1992, plaintiff mailed a copy of the proposed default judgment and the Affidavit of Thomas M. Lancia, sworn to on May 5, 1992 ("Lancia May 5 Aff."), to

---

1. Plaintiff does not dispute that CSC is a Taiwanese corporation, but argues that CSC has not submitted sufficient documentary evidence to that effect. *See infra* p. 914.

2. Although plaintiff does not specifically dispute that (1) CSC sold the third shipment of Metallurgical Coke Breeze to Spacific; (2) CSC delivered the third shipment to Spacific in Kaohsiung; (3) *Spacific sold the third shipment to MCCI Corporation;* and (4) Spacific chartered plaintiff's vessel to carry the third shipment to the Philippines, plaintiff has submitted what it claims is a copy of a bill of lading for carriage of this shipment which indicates that CSC, rather than Spacific, was the shipper of the third shipment of Metallurgical Coke Breeze. *See* Affidavit of Henry Shih, executed on August 7, 1992 ("Shih Aff."), at ¶ 4; Exhibit "4" to Shih Aff.

3. CSC claims that it was never notified of the pretrial conferences held on January 24 and February 21, 1992. *See* Supplemental Affirmation of Tsong–Ying Huang ("Huang Supplemental Affirmation"), executed on August 26, 1992, at ¶ 6.

CSC in Taiwan. The default judgment was signed by the Court on May 7, 1992, and entered on May 13, 1992. According to plaintiff, copies of the entry of default were mailed to CSC. *See* Affidavit of Thomas M. Lancia, sworn to on August 7, 1992 ("Lancia August 7 Aff."), at ¶ 7.[4]

Presently before the Court is CSC's motion to vacate the default judgment and dismiss the complaint on the grounds that (1) the Court lacks subject matter jurisdiction because CSC is entitled to immunity under the Foreign Sovereign Immunities Act of 1976 (the "Act" or the "FSIA"), 28 U.S.C. §§ 1330, 1602–1611, (2) the Court lacks personal jurisdiction because service of process was defective under the FSIA and Rule 4 of the Federal Rules of Civil Procedure, and service of the default judgment was defective under the FSIA, (3) the default judgment against CSC was improperly entered under the FSIA, (4) CSC's failure to answer was the result of mistake, inadvertence, surprise or excusable neglect, (5) CSC does not have sufficient contacts with New York to sustain the Court's exercise of personal jurisdiction; (6) the United States is an inconvenient forum for this action.

## DISCUSSION

■ Rule 60(b)(4) of the Federal Rules of Civil Procedure authorizes relief from void judgments. A judgment is void and subject to vacatur if the court lacks either subject matter jurisdiction or personal jurisdiction, regardless of whether a meritorious defense exists. *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y.1986); *Leab v. Streit*, 584 F.Supp. 748, 760–61 (S.D.N.Y. 1984); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2862 (1973) ("Wright & Miller"). Unlike motions made pursuant to other subsections of 60(b), the Court has no discretion regarding motions to vacate void judgments under Rule 60(b)(4). The court must vacate a void judgment. *Triad Energy Corp. v. McNell*, 110 F.R.D. at 384 (citations omitted); *Leab v.*

*Streit*, 584 F.Supp. at 760 (citations omitted); Wright & Miller § 2862. In addition, as a void judgment cannot acquire validity by way of laches, a judgment may be attacked as void at any time. *Triad Energy Corp. v. McNell*, 110 F.R.D. at 385; Wright & Miller § 2862.

### *Subject Matter Jurisdiction*

■ CSC contends that the Court lacks subject matter jurisdiction, and thus the default judgment should be vacated and the action dismissed, because CSC is entitled to immunity under the FSIA. The FSIA represents the exclusive means by which United States courts may exercise subject matter jurisdiction over a foreign sovereign. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 687–88, 102 L.Ed.2d 818 (1989); *Fickling v. Commonwealth of Australia*, 775 F.Supp. 66, 69 (E.D.N.Y.1991). That Act provides that foreign states, including "agencies or instrumentalities" of foreign states, *see* 28 U.S.C. § 1603(a), are immune from suits in federal courts unless the dispute falls within specified exceptions to immunity. 28 U.S.C. §§ 1604–1607; *International Hous. Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8, 10 (2d Cir.1989). An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title nor created under the laws of any third country.

28 U.S.C. § 1603(b). Thus, the threshold question is whether CSC qualifies as an "agency or instrumentality of a foreign

---

4. According to CSC, it did not receive plaintiff's proposed default judgment and Lancia's May 5 Aff. until May 12, 1992, five days after the Court signed the default judgment, and it never received a copy of the default judgment entered on May 13, 1992. *See* Affirmation of Tsong–Ying Huang, executed on July 1, 1992 ("Huang Aff."), at ¶ 23; Huang Supplemental Aff. at ¶¶ 3, 5.

state," namely the ROC,[5] entitled to immunity under the Act.

■ Before examining CSC's proof with respect to this issue, it is important to note that the entity claiming the protection of the FSIA has the burden of demonstrating, *inter alia,* that it meets the three criteria set forth above for agencies or instrumentalities. *Outbound Maritime Corp. v. P.T. Indonesian Consortium of Constr. Indus.,* 575 F.Supp. 1222, 1224 (S.D.N.Y.1983); *see also Braka v. Bancomer, S.A.,* 589 F.Supp. 1465, 1467 (S.D.N.Y.1984), *aff'd,* 762 F.2d 222 (2d Cir.1985). Once a defendant presents *prima facie* evidence of this, the burden shifts to the plaintiff to demonstrate that the Act does not apply. *Outbound Maritime Corp. v. P.T. Indonesian Consortium of Constr. Indus.,* 575 F.Supp. at 1224 (citations omitted).

In this case, the Court finds that CSC has demonstrated that it is an "instrumentality" of the ROC entitled to immunity under the FSIA. Specifically, CSC has established that (1) CSC is a corporation duly organized and existing under the laws of the ROC, with its principal office in Taiwan, *see* Affirmation of King–Hsing Chang, executed on July 1, 1992 ("Chang Aff."), at ¶ 3; (2) from 1977 to the present, the ROC Government has at all times owned a majority of CSC's outstanding stock, *see* Chang Aff. at ¶ 4; Supplemental Affirmation of King–Hsing Chang, executed on August 26, 1992 ("Supplemental Chang Aff."), at ¶ 5; Table of CSC's principal stockholders, attached as Exhibit "1" to Chang Aff. as supplemented by ¶ 3 of the Supplemental Chang Aff. (demonstrating that the Ministry of Economic Affairs ("MOEA"), a division of the ROC Government, owned 91.-30% of CSC's shares as of January 31, 1992); Letter issued by the MOEA in 1977, attached as Exhibit "2" to Supplemental Chang Aff. ("your corporation structure became a state-owned enterprise structure since July 1, 1977"); Affirmation of Gary Wang, certified public accountant of T.N. Soong & Co., executed on August 26, 1992, at ¶ 3; (3) CSC

operates under the general supervision of the MOEA, namely, the MOEA has responsibility for approving a wide range of matters, including CSC's annual budget, the adjustment of capital, and the management, employment and financial accounting rules, *see* Chang Aff. at ¶ 6; Regulations Governing CSC, attached as Exhibit "2" to Chang Aff.; (4) CSC's Chairman of the Board of Directors and the President of CSC must be designated by MOEA and approved by the ROC Executive Yuan, *see* Chang Aff. at ¶ 7; (5) ten other members of the thirteen member Board of Directors and two of the three supervisors of CSC are currently appointed by the MOEA, *see* Chang Aff. at ¶ 7; (6) CSC's annual financial statements are subject to review by the ROC Ministry of Audit, and its annual budget must be approved by the ROC Legislative Yuan (the ROC Congress), *see* Chang Aff. at ¶ 8.

Despite this evidence, plaintiff argues that the FSIA does not apply as CSC has not made a showing sufficient to establish that it is an "instrumentality" of a foreign state. Specifically, plaintiff contends that (1) CSC has not submitted documentary evidence demonstrating that it is a separate legal entity; (2) the evidence produced by CSC, which includes only self-serving affidavits and no submissions or documents from the United States Department of State, the Taiwanese Embassy or the Taiwanese MOEA, is not sufficient to demonstrate that CSC is owned by the Taiwanese Government; (3) in response to inquiries by Henry Shih, a stockholder of plaintiff, neither the Taiwan Security Exchange Corporation ("TSEC"), nor the China External Trade Development Council ("CETRA") mentioned that CSC was owned by the Taiwanese Government. *See* Shih Aff. at ¶¶ 2–3; Exhibits "1," "2," and "3" to Shih Aff. The Court finds plaintiff's arguments unavailing.

■ First, the affidavits submitted by CSC detailing *its corporate status and the*

---

5. Subject matter jurisdiction over trade instrumentalities of the ROC is governed exclusively by the FSIA, even though the United States does not recognize that government. *Millen Indus., Inc. v. Coordination Council for N. Am. Affairs,* 855 F.2d 879, 882–83 (D.C.Cir.1988); Taiwan Relations Act, 22 U.S.C. § 3303(b)(1) ("Whenever the laws of the United States refer or relate to foreign countries, nations, states, governments, or similar entities, such terms shall include and such law shall apply with respect to Taiwan.").

ownership by the ROC Government of a majority of CSC's outstanding stock, are sufficient to demonstrate that CSC is an "instrumentality" of a foreign state within the meaning of the FSIA.[6] *See e.g., O'Connell Machinery Co. v. M.V. "Americana",* 566 F.Supp. 1381, 1384 (S.D.N.Y.1983), *aff'd,* 734 F.2d 115 (2d Cir.1984).[7] Moreover, plaintiff's reliance on *Outbound Maritime Corp. v. P.T. Indonesian Consortium of Constr. Indus.,* 575 F.Supp. at 1224, for the proposition that CSC's affidavits are not sufficient, is misplaced. In *Outbound,* unlike the case at hand, the affidavit itself was confusing, and it was unclear whether the defendant corporation was ever transferred from private hands to the government. *Id.*

■ Second, plaintiff cannot defeat a claim of immunity under the FSIA by simply arguing that more proof is required to prove "agency or instrumentality" status. Rather, plaintiff must specifically rebut CSC's persuasive evidence. *See O'Connell Mach. Co. v. M.V. "Americana,"* 566 F.Supp. at 1384 (citing *S & S Mach. Co. v. Masinexportimport,* 706 F.2d at 415). In this case, plaintiff's only attempt at factual rebuttal is Mr. Shih's Affidavit which states that he received certain documents from the TSEC and the CETRA that failed to indicate CSC's government-owned status. Shih Aff. at ¶¶ 2–3; Exhibits "1," "2," and "3" to the Shih Aff. The documents referred to, however, do not establish that CSC is not owned by the ROC Government. *See* Exhibits to Shih Aff. Rather, the Affidavit indicates that Mr. Shih never specifically requested information regarding CSC's ownership. If he had, both organizations would have provided him with the relevant material. *See* Affidavit of Daniel T.H. Tsai ("Tsai Aff."), executed on August 26, 1992, at ¶¶ 3–4. Without such a request, however, it is not customary for

either the TSEC or the CETRA to mention governmental ownership in the documents provided to Mr. Shih. Tsai Aff. at ¶¶ 3–4. Thus, plaintiff has failed to rebut CSC's evidence regarding government ownership or demonstrate that the FSIA does not apply. Accordingly, the Court finds that CSC is an "agency or instrumentality" of the ROC within the meaning of the FSIA.

■ Having determined that CSC is an "instrumentality" of the ROC, the next inquiry is whether any of the FSIA's exceptions apply to deprive CSC of its immunity. It is the plaintiff's burden to come forward with some facts which would allow the Court to find that an exception to the Act applies. *Fickling v. Commonwealth of Australia,* 775 F.Supp. at 69 (citing *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 289 n. 6 (5th Cir.1989); *Olsen ex. rel. Sheldon v. Mexico,* 729 F.2d 641 (9th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984)). Once the plaintiff offers evidence, the party claiming immunity bears the burden of proving by a preponderance of the evidence that the exception does not apply. *Joseph v. Office of Consulate Gen. of Nigeria,* 830 F.2d 1018, 1021 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988) (citing *Meadows v. Dominican Republic,* 817 F.2d 517, 522–23 (9th Cir.1987); *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation,* 730 F.2d 195, 199 (5th Cir.1984)). In this case, plaintiff has presented evidence regarding two of the Act's exceptions, namely, the waiver exception contained in 28 U.S.C. § 1605(a)(1), and the commercial activity exception contained in 28 U.S.C. § 1605(a)(2).

**A. The Waiver Exception**

The FSIA provides that:

---

**6.** Despite this determination, the Court notes that in this case, CSC has submitted additional evidence regarding the ROC's ownership of a majority of CSC's shares, namely, a table of CSC's stockholders as of January 31, 1992, attached as Exhibit "1" to Chang Aff., a letter issued by the MOEA in 1977, attached as Exhibit "2" to Supplemental Chang Aff., and Regulations Governing CSC, attached as Exhibit "2" to Chang Aff.

**7.** Although the affidavit relied on in *O'Connell* was submitted by a foreign official, the Court did not indicate that the affiant's official status was a prerequisite to finding that an entity was an "agency or instrumentality of a foreign state." Rather, the Court simply stated that "[s]tatements of foreign officials ... have been accorded great weight in determining whether an entity is entitled to claim the protection of the FSIA." *Id.* (citing *S & S Mach. Co. v. Masinexportimport,* 706 F.2d 411, 415 (2d Cir.1983)).

"[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver."

28 U.S.C. § 1605(a)(1).

In the case at hand, plaintiff contends that CSC implicitly waived its sovereign immunity. In support of this contention, plaintiff has submitted a bill of lading which it claims is the contract of carriage for the third shipment of Metallurgical Coke Breeze to the Philippines and the only contract between plaintiff and CSC, the designated shipper on the bill of lading. *See* Bill of Lading, attached as Exhibit "4" to Shih Aff.[8] According to plaintiff, the bill of lading is evidence of an implicit waiver because it contains clauses demonstrating that the parties anticipated that American law would apply in the case of collisions and Japanese law would apply if there was a dispute between the parties. The relevant clauses are as follows:

> 19. Unless otherwise herein expressly provided, this Bill of Lading shall be construed in accordance with Japanese Law and any dispute arising between the parties hereto shall be referred to the HIGH COURT OF JUSTICE IN TAIWAN.

> 22. United States Collision Clause. If the liability for any collision in which the ship is involved while performing this Bill of Lading falls [sic] to be determined in accordance with the laws of the United States of America, the following clause shall apply ...

Plaintiff also contends that CSC waived its immunity implicitly by failing to answer the complaint. Specifically, plaintiff contends that because CSC did not answer the complaint and raise the affirmative defense of sovereign immunity, it cannot now raise such a defense. The Court disagrees with both plaintiff's contentions and finds that there has been no waiver of immunity by CSC.

The House Report accompanying the passage of the FSIA gives three examples of an implied waiver:

> With respect to implicit waivers, the courts have found such waivers in cases where a foreign state has agreed to arbitration in another country or where a foreign state has agreed that the law of a particular country should govern a contract. An implicit waiver would also include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.

*Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 721 (9th Cir.1992) (citing H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617).[9] Courts have been reluctant to extend the bases of implicit waiver beyond these three examples. *Colonial Bank v. CGMF,* 645 F.Supp. 1457, 1461 (S.D.N.Y.1986). Moreover, courts have construed the implicit waiver clause of 1605(a) narrowly. *Joseph v. Office of Consulate Gen. of Nigeria,* 830 F.2d at 1022 (citing *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d at 377); *see also Colonial Bank v. CGMF,* 645 F.Supp. at 1461. For example, although the House Report refers to "another country" or a "particular country," most courts have refused to find an implicit waiver of immunity to suit in United States courts by reason of waiver in a

---

**8.** Despite plaintiff's submission of this bill of lading, CSC claims that there was no contract between CSC and the plaintiff. According to CSC, the undated bill of lading was never issued to or received by CSC, and CSC has no knowledge about the bill of lading. *See* Huang Aff. at ¶ 10. Thus, even if clauses within the bill of lading were deemed an implicit waiver of sovereign immunity, they could not constitute a waiver by CSC. *See Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 377 (7th Cir.1985) ("a contract's waiver of immunity does not apply

to third parties not privy to the contract"). Although the Court also has some doubts about the legitimacy of the bill of lading offered by plaintiff, it will not probe more deeply into this matter at the current time because even if the bill were legitimate, it would not create a waiver of CSC's immunity. *See infra* pp. 916–917.

**9.** As plaintiff does not contend that CSC has agreed to arbitrate in a foreign country, the Court will only address the applicability of the second and third examples.

jurisdiction other than the United States. *Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d at 1022 ("a sovereign party has waived immunity where a contract *specifically* states that the laws of a jurisdiction within the United States are to govern the transaction") (citing cases); *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d at 377 (citing cases); *Colonial Bank v. CGMF*, 645 F.Supp. at 1461–62 (citing cases).[10]

Accordingly, the Court finds that Clause 19, which provides that the "bill of lading shall be construed in accordance with Japanese law and any dispute arising between the parties ... shall be referred to the HIGH COURT OF JUSTICE IN TAIWAN," does not act as an implicit waiver of sovereign immunity in United States actions. Similarly, Clause 22 cannot constitute a waiver because it is not an agreement that American law will govern the contract.

Plaintiff's additional contention that CSC waived its sovereign immunity by failing to answer the complaint is directly contrary to controlling law. It has been consistently held that a foreign sovereign's failure to appear in an action and serve an answer is not an implicit waiver of immunity under the FSIA. *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C.Cir. 1987); *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d at 378; *Carl Marks & Co. v. Union of Soviet Socialist Republics*, 665 F.Supp. 323, 330–31 (S.D.N.Y.1987), *aff'd*, 841 F.2d 26 (2d Cir.1988). In fact, plaintiff's contention that failure to appear or answer is an automatic waiver of immunity has been specifically rejected by several courts. *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d at 1547; *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d at 378; *Castro v. Saudi Arabia*, 510 F.Supp. 309, 311 (W.D.Tex.1980); *see also Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, n. 20, 103 S.Ct. 1962, n. 20, 76 L.Ed.2d 81 (1983) ("even if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine that immunity is unavailable under the Act").

As the House Report indicates, it is only when the foreign sovereign has filed a responsive pleading in the action without raising the defense of sovereign immunity that courts will find an implicit waiver of the defense. *See Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico, S.A.*, 727 F.2d 274, 277–78 (2d Cir.1984). As CSC has neither appeared nor filed a responsive pleading in the instant action, the Court finds that it has not implicitly waived its sovereign immunity defense.

Thus, the Court finds that CSC has not implicitly waived immunity within the meaning of § 1605(a) of the FSIA. Accordingly, subject matter jurisdiction in the instant case does not exist under the FSIA's waiver exception.

**B. The Commercial Activity Exception**

The commercial activity exception denies immunity in any case

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Since plaintiff appears to rely solely on the third clause and has come forward with no facts which would allow the Court to conclude that either of the first two clauses apply, and since there can be no dispute as to the commercial activity aspect of the third clause, the only remaining issue is whether the requisite nexus with the United States is present, i.e., whether CSC's acts caused a "direct effect" on plaintiff "in the United States."

Plaintiff contends that the incident, namely the loss of the vessel, crew members and cargo, "had a direct effect in the United States within the broadly interpreted meaning of the statute." Plaintiff's Memorandum

---

10. The only case to the contrary, *Ipitrade Intl. S.A. v. Federal Republic of Nigeria*, 465 F.Supp. 824, 826 (D.D.C.1978) (contract's choice of Swiss law and European forum to resolve disputes waived immunity in United States), has not been followed.

918

of Law in Opposition to Motion to Set Aside Default and Dismiss Complaint ("Pl.Mem."), at 11. Specifically, plaintiff claims that as the cargo being shipped was insured by an American insurance company, namely, American Home Assurance Company, *see* Shih Aff. at ¶ 9, there was a "direct effect in the United States because payment on the claimed [sic] flowed directly from the incident of which plaintiff complains." Pl.Mem. at 12. The Court disagrees.

Generally, to determine the applicability of the third clause, the Court must engage in two inquiries, namely, whether CSC's conduct had a sufficiently "direct effect" on plaintiff, and, whether that "direct .effect" occurred "in the United States." *See Weltover, Inc. v. Republic of Argentina,* 941 F.2d 145, 151–53 (2d Cir.1991), *aff'd,* — U.S. ——, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). In this case, however, there is no need dwell on the first inquiry because even assuming that CSC's conduct had a "direct effect" on plaintiff, it is impossible to conclude that the "direct effect" was sufficiently "in the United States," as required by the FSIA.

As the Second Circuit has recognized, localizing the effect in the United States is more problematic when, as here, the plaintiff is a foreign corporation having few other contacts with the United States forum.[11] *Weltover, Inc. v. Republic of Argentina,* 941 F.2d at 152. However, that does not preclude a court from finding that a foreign plaintiff suffered a "direct effect in the United States." *Id.* In determining where the effect of a defendant's conduct is felt directly, "courts often look to the place where legally significant acts giving rise to the claim occurred." *Id.* (citing *Zedan v. Kingdom of Saudi Arabia,* 849 F.2d 1511, 1515·(D.C.Cir.1988) (legally significant event must occur in the United States)).

In the instant case, all "legally significant acts" took place in Taiwan or the waters

between Taiwan and the Philippines, including chartering the vessel, the delivery, loading and shipping of the cargo, payment of CSC, and the loss of plaintiff's vessel and three crew members. Thus, although the cargo was insured by an American insurance company, the effect of CSC's alleged conduct abroad was not felt directly "in the United States," but in Taiwan and the waters between Taiwan and the Philippines. *See e.g., Australian Gov't Aircraft Factories v. Lynne,* 743 F.2d 672, 675 (9th Cir.1984) (direct effect of plane crash in Indonesia was in that country, where the plane was destroyed and its functional use lost, and not in the United States where the American corporate plaintiff incurred financial loss as a result of the crash), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1189, 84 L.Ed.2d 335 (1985). Accordingly, the Court finds that CSC's conduct did not cause "a direct effect in the United States" under § 1605(a)(2).

Because none of the FSIA's exceptions operate to deprive CSC of its immunity, the Court lacks subject matter jurisdiction over the instant action. Consequently, the default judgment signed by the Court on May 7, 1992, and filed on May 13, 1992, is vacated as void, and the action is dismissed.[12]

## CONCLUSION

For the reasons set forth above, CSC's motion to vacate the default judgment and dismiss the complaint is granted. This Order closes the case.

SO ORDERED.

---

11. The complaint in this matter asserts:
   At all times hereinafter mentioned the plaintiff KAO HWA SHIPPING CO., S.A., (KH SHIPPING) was and still is a corporation duly organized and existing and by virtue of the laws of Panama, with an office and principal place of business at 34, Lane 161, Tze Chiang No. 2 N.D. Road, Kaohsiung, Taiwan.

Complaint, at ¶ 2.

12. Having determined that there is no subject matter jurisdiction, the Court need not address CSC's other contentions in support of its motion to vacate the default judgment and dismiss the action.