**Rukmini Sukarno KLINE, Frankenburg Import–Export Ltd., a Kansas Corporation, Franklin L. Kline, Plaintiffs,**

**v.**

**Yasuyuki KANEKO, Paloma Cordero De De La Madrid, Manuel Bartlett Diaz, Richard Neal, J.E. Franklin, C.D. Douglas, and Jim Whalen, Defendants.**

No. 87 Civ. 6479(RJW).

United States District Court,
S.D. New York.

May 3, 1988.

Sulkow, Birnbach, Jasilli & Schleifer, New York City, for plaintiffs; Gerald Gorinsky, Howard R. Birnbach, of counsel.

United Mexican States, New York City, for pro se defendants Paloma Cordero de De la Madrid and Manuel Bartlett Diaz.

## OPINION

### ROBERT J. WARD, District Judge.

Plaintiffs brought this action in state court, claiming breach of contract, breach of fiduciary duty, and malicious fraud against Yasuyuki Kaneko, Richard Neal, J.E. Franklin, C.D. Douglas and Jim Whalen (collectively, "the Frankenburg defendants"). Plaintiffs also allege that Paloma Cordero de De la Madrid, the wife of the president of the United Mexican States ("Mexico"), and Manuel Bartlett Diaz, Mexico's Secretary of Government (collectively, "the Mexico defendants"), caused the false imprisonment and abduction of plaintiff Rukmini Sukarno Kline from her Mexico City apartment and her expulsion from Mexico without warrant, extradition process or any authority of law. Plaintiffs further assert that the Mexico defendants ordered Kline's Mexico City apartment to be searched and ransacked. The Mexico defendants removed the action to this Court, and thereafter filed a motion to dismiss. For the reasons that follow, the action is dismissed as to defendant Bartlett Diaz and remanded to state court as to the remaining defendants.

## BACKGROUND

Briefly, the underlying dispute giving rise to this action involves a commercial transaction among plaintiffs, the Frankenburg defendants and Petroleos Mexicanos, S.A., the Mexican state oil company ("Pemex"), for the supply of steel pipes to Pemex. Plaintiffs claim that as sole authorized suppliers of steel pipe to Pemex, they contacted the Frankenburg defendants to fill purchase orders that had been awarded to plaintiffs. Instead of operating through plaintiffs, however, the Frankenburg defendants allegedly created a Cayman Islands corporation with the name Frankenburg Import–Export Ltd., which plaintiffs assert is confusingly similar to the name of their corporation. Plaintiffs allege that the Frankenburg defendants then dealt directly with Pemex, causing plaintiffs to lose substantial commission payments. Plaintiffs further allege that as part of the scheme, Kline was kidnapped, falsely imprisoned and then forced onto a private plane back to the United States by aides of the Mexico defendants.

After this action was filed in state court, the Mexico defendants removed to this Court and moved to dismiss, pursuant to Rules 12(b)(1), 12(b)(2), 12(b)95) and 12(b)(6), Fed.R.Civ.P., and for the imposition of sanctions pursuant to Rule 11, Fed. R.Civ.P. The Frankenburg defendants have taken no part in either the removal of this action from state court or in the instant motion.

## DISCUSSION

The Mexico defendants argue that Bartlett Diaz, as Secretary of Government, was operating in his official capacity in ordering the expulsion of plaintiff Kline from Mexico and is therefore immune from suit according to the provisions of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Pub.L. 94–583, 90 Stat. 2891 (codified at 28 U.S.C. §§ 1330, 1332, 1391, 1441, 1602–1611). Defendant Cordero de De la Madrid, they assert, as the wife of Mexico's head of state, is protected by head of state immunity. The Mexico defendants put forth additional grounds for dismissal, including lack of personal jurisdiction, improper service and the statute of limitations.

The federal courts have subject matter jurisdiction over suits brought under the FSIA, even where the rule of decision is under state law. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 491–97, 103 S.Ct. 1962, 1970–73, 76 L.Ed.2d 81 (1983). This jurisdiction is founded not on the Diversity Clause of Article III of the Constitution, but on the "Arising Under" Clause. *Id.* The courts' subject matter jurisdiction, though, depends on the applicability of one of the exceptions to sovereign immunity provided for in the FSIA. *Id.* at 485 n. 5, 489, 493, 103 S.Ct. at 1967 n. 5, 1969, 1971. If one of the exceptions to immunity does not apply, then the court lacks subject matter jurisdiction, as well as personal jurisdiction, over the foreign defendant. *Id.* at 485 n. 5, 103 S.Ct. at 1967 n. 5.

**389**

### 1. *Bartlett Diaz' Motion to Dismiss*

The initial question to be resolved is whether defendant Bartlett Diaz may properly claim the protection of FSIA at all. Plaintiffs assert that Bartlett Diaz' expulsion of Kline from Mexico was a personal act, accomplished without any authority of law. Defendants assert, to the contrary, that Bartlett Diaz was acting under the authority of his office and in his official capacity. The FSIA does apply to individual defendants when they are sued in their official capacity. *American Bonded Warehouse Corp. v. Compagnie Nationale Air France*, 653 F.Supp. 861, 863 (N.D.Ill.1987); *Rios v. Marshall*, 530 F.Supp. 351, 371 (S.D.N.Y.1981).[1] The Court, then, must resolve whether Bartlett Diaz' alleged involvement in Kline's expulsion was an official act, and if so, whether an exception to the FSIA's general grant of immunity would apply.

A court considering a motion to dismiss is usually confined to the facts in the pleadings, but "[o]n a motion attacking the court's jurisdiction, the district judge may resolve disputed jurisdictional fact issues," 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2713 at 612 (2d ed. 1983), and may rely on affidavits as well as the pleadings. *Braka v. Bancomer, S.A.*, 589 F.Supp. 1465, 1468 (S.D.N.Y. 1984), *aff'd*, 762 F.2d 222 (2d Cir.1985).

Sovereign immunity is an affirmative defense, and defendants have the burden of proof on the issue. Once defendants have produced prima facie evidence that they are entitled to immunity, the burden of going forward shifts to plaintiffs to produce evidence establishing that immunity does not apply. The ultimate burden of proof on the issue, however, remains at all times with defendants. H.R.Rep. No. 1487, 94th Cong., 2d sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6616. *Accord Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987); *Baglab Ltd. v. Johnson Matthey Bankers Ltd.*, 665 F.Supp. 289, 293–94 (S.D.N.Y.1987); *Braka v. Bancomer, S.A.*, *supra*, 589 F.Supp. at 1467–68.

### A. Official Capacity

Defendants have submitted two affidavits of government officials setting forth the duties of Bartlett Diaz and the circumstances of Kline's expulsion. Alfonso de Rosenzweig Diaz, the Undersecretary of Foreign Affairs for Mexico, states that defendant Bartlett Diaz is the Secretary of Government, and that the Secretariat of Government is responsible under Mexican law for the implementation and enforcement of Mexican immigration laws. Affidavit of Alfonso de Rosenzweig Diaz, filed October 5, 1987 ¶¶ 1, 3, 4. Further, Jose Ortiz Arana, General Director of Migratory Services, states that plaintiff Kline was placed aboard a plane bound for the United States at Mexico City's airport and expelled from Mexican territory on February 27, 1984 for violations of Mexico's immigration law. Affidavit of Jose Ortiz Arana, filed October 5, 1987 ¶¶ 1–3. Plaintiffs argue only that the expulsion was carried out without any extradition hearing and with no process. Affidavit of Rukmini Sukarno Kline, filed December 7, 1987 ¶ 5. Plaintiffs' arguments do not respond to defendants' assertions that Bartlett Diaz' involvement in Kline's expulsion was within the scope of his official duties. It is not for this Court to question the internal administration of Mexico's immigration laws. *See Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1380 (5th Cir.1980)

---

1. One district court in California has recently come to the contrary conclusion, that "the sovereign immunity doctrine ... is not applicable to individual government officials." *Republic of Phillipines v. Marcos*, 665 F.Supp. 793, 797 (N.D. Cal.1987). This Court, however, finds the reasoning of the *Marcos* court unpersuasive and declines to follow it. The *Marcos* court looked to the statutory definition of the entities covered under the FSIA, concluding that the terms "agency," "instrumentality," "entity" and "organ" meant that the statute is not intended to apply to natural persons. *Id.* The court cited no judicial authority for its position, but simply stated that it was not aware of any cases to the contrary. This Court is not persuaded by the statutory construction offered by the *Marcos* court and will follow *Rios v. Marshall*, 530 F.Supp. 351, 371 (S.D.N.Y.1981) ("[I]nsofar as Edwards is sued in his official capacity as agent of the instrumentality, he is equally protected by principles of foreign sovereign immunity.").

(actions of Dominican immigration officials, in denying entry to plaintiffs and compelling their immediate removal, not subject to judicial review); *Frolova v. Union of Soviet Socialist Republics*, 558 F.Supp. 358, 364 (N.D.Ill.1983) (denial of exit visa), *aff'd*, 761 F.2d 370 (7th Cir.1985). Kline's assertion that she was not accorded due process is in no way inconsistent with Bartlett Diaz having acted in his official capacity.

■ The affidavits of Rosenzweig Diaz and Ortiz Arana are, then, effectively uncontroverted. In determining whether an entity is entitled to claim the protection of the FSIA, courts have accorded great weight to statements of foreign officials. *E.g., S & S Machinery Co. v. Masinexportimport*, 706 F.2d 411, 415 (2d Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983); *O'Connell Machinery Co. v. M.V. "Americana"*, 566 F.Supp. 1381, 1384 (S.D.N.Y.1983), *aff'd*, 734 F.2d 115 (2d Cir.), *cert. denied*, 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701 (1984).[2] Because plaintiffs have come forward with no

evidence to rebut defendants' prima facie showing that Bartlett Diaz was acting in his official capacity, this Court concludes that Bartlett Diaz' involvement in Kline's expulsion from Mexico was pursuant to the execution of his official duties. Bartlett Diaz, then, can be sued only in his official capacity, and the protections of the FSIA are available to him.

## B. Exceptions to Immunity

Plaintiffs assert that the acts complained of fall within the exceptions to immunity set forth in 28 U.S.C. §§ 1605(a)(2), (a)(3) and (a)(5). These are, respectively, the commercial activity exception, the taking of property exception, and the non-commercial tort exception.[3] None of these, however, can apply to plaintiffs' claims against Bartlett Diaz.

### i. Commercial Activity Exception

■ Two questions must be resolved when determining whether the commercial activity exception to sovereign immunity applies in a particular case. The court

---

2. *Outbound Maritime Corp. v. P.T. Indonesian Consortium*, 575 F.Supp. 1222 (S.D.N.Y.1983), is not to the contrary. In *Outbound Maritime*, the court refused to give weight to the affidavit of the consul general of Indonesia because of specific infirmities with the particular document before it. The court found the affidavit "confusing." The defendant shipping company had allegedly been nationalized, but the affidavit failed to set out whether private interests in the defendant had in fact been transferred to the government. *Id.* at 1224. In a parallel action involving the same parties, the United States District Court for the District of Maryland accorded great weight to an affidavit of the consul general in reaching its conclusion that the defendant was indeed "an agency or instrumentality" of the Republic of Indonesia and therefore entitled to the protection of the FSIA. *Outbound Maritime Corp. v. P.T. Indonesian Consortium*, 582 F.Supp. 1136, 1143–45 (D.Md.1984).

3. 28 U.S.C. § 1605(a) provides in part:
   (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
   . . . .
   (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state: or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territo-

ry of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
   (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;
   . . . .
   (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—
   (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
   (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

must decide whether the suit is base upon "commercial activity" within the meaning of the FSIA, and if so, whether this commercial activity had the required jurisdictional nexus with the United States. *See Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1107 (5th Cir.1985). Because plaintiffs' claim against Bartlett Diaz fails on the first question, the Court need not consider whether Bartlett Diaz' alleged activity has the requisite jurisdictional nexus.

Plaintiffs assert that Bartlett Diaz expelled Kline from Mexico in order to promote powerful business interests antagonistic to Kline. Complaint ¶ 51. However, in assessing the commercial quality of alleged conduct, a court is to look at the nature of the conduct, not its purpose, *Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2d Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); 28 U.S.C. § 1603(d), and should focus only on the acts of the individual named defendants. *See Callejo v. Bancomer, S.A., supra*, 764 F.2d at 1109 ("Under the FSIA, sovereign immunity depends on the nature of those acts of the defendant that form the basis of the suit."). The court must inquire whether the activity is of the type an individual would customarily carry on for profit. *Letelier v. Republic of Chile, supra*, 748 F.2d at 797.

This Court submits that the expulsion of foreign nationals from sovereign nations is not an activity customarily carried out for profit by private persons. Even if considered in the terms suggested by plaintiffs, that Kline was kidnapped or abducted, Bartlett Diaz' alleged activity does not amount to commercial activity. Kidnapping cannot be considered a commercial activity, because a private person cannot lawfully engage in that activity. *Id.; Arango v. Guzman Travel Advisors Corp., supra*, 621 F.2d 1371. Accordingly, plaintiffs' claims against Bartlett Diaz do not fit within the commercial activities exception to the FSIA.

**ii. Taking of Property Exception**

■ A brief examination of the statute itself reveals that the taking of property exception cannot apply to the instant action. For section 1605(a)(3) to apply, a plaintiff must allege a taking of property in violation of international law. Further, that property must be present in the United States (or exchanged for property that is present in the United States), or it must be held by a defendant engaged in commercial activity in the United States.[4] Kline alleges that her Mexico City apartment was searched and that she lost many valuable personal possessions. Complaint ¶ 63. Even without reaching the doubtful question of whether the alleged "burglary" and "rifling" of Kline's apartment was a violation of international law, jurisdiction cannot exist pursuant to section 1605(a)(3) because the property alleged to have been lost is not in the United States, and neither Bartlett Diaz nor the Secretariat of Government is alleged to be engaged in commercial activity in the United States. The statutory requirements of section 1605(a)(3) clearly have not been met in the instant case.

**iii. Non–Commercial Tort Exception**

■ Finally, plaintiffs assert that the non-commercial tort exception applies to deny Bartlett Diaz the protection of sovereign immunity. Section 1605(a)(5) provides that sovereign immunity will not be recognized in an action "against a foreign state for personal injury ... or damage to or loss of property, occurring in the United States."[5] The alleged kidnapping and burglary, however, occurred in Mexico City, not in the United States. It is insufficient, for the purposes of section 1605(a)(5), for plaintiffs to assert that Kline was forced to the United States after she was abducted from her Mexico City apartment. If the non-commercial tort exception is to apply, the entire tort must be committed in the United States. *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1525 (D.C.Cir.1984), *cert. de-*

**4.** For the text of 28 U.S.C. § 1605(a)(3), *see supra* note 3.

**5.** For the text of 28 U.S.C. § 1605(a)(5), *see supra* note 3.

*nied,* 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985).

In any event, it appears that plaintiffs' assertion of the non-commercial tort exception runs afoul of section 1605(a)(5)(A), which specifically provides that claims based on the performance or failure to perform a discretionary function will not be entertained. Enforcement of Mexico's immigration laws and the decision to expel Kline from the country clearly are discretionary functions within the scope of defendant Bartlett Diaz' official duties.

The Court concludes that Bartlett Diaz is a "political subdivision" or an "agency or instrumentality" of Mexico within the meaning of 28 U.S.C. § 1603. The provisions of the FSIA therefore apply to plaintiffs' claims against Bartlett Diaz. Yet none of the exceptions to sovereign immunity, enumerated in section 1605, apply to plaintiffs' claims against Bartlett Diaz. Bartlett Diaz is, therefore, immune from suit in the courts of the United States and in the state courts. Accordingly, Bartlett Diaz is dismissed from the action with prejudice.

### 2. *Cordero de De la Madrid's Motion to Dismiss*

■ In contrast to the dispute regarding the nature of Bartlett Diaz' involvement in Kline's expulsion from Mexico, the parties agree that defendant Cordero de De la Madrid has no official role or duties within the government of Mexico and her alleged involvement in Kline's abduction was solely in her personal capacity. Defendants' Memorandum in Support of Motion to Dismiss and Motion for Sanctions at 4–5; Plaintiffs' Memorandum in Opposition at 5–6. The FSIA, then, cannot apply to provide immunity from suit to defendant Cordero de De la Madrid, nor to confer subject matter jurisdiction on this Court over plaintiffs' claims against Cordero de De la Madrid. There is no alternative basis for this Court to assert its jurisdiction over plaintiffs' claims against Cordero de De la Madrid.[6] The claims asserted are based solely on state law, and the parties do not have the complete diversity required by the general diversity statute, 28 U.S.C. § 1332.[7]

### 3. *Remand to State Court*

■ Although it appears that defendant Cordero de De la Madrid may be entitled to a dismissal under the Head of State doctrine, and she may be able to challenge the personal jurisdiction of the New York courts over her, this Court has no jurisdiction to decide these issues. No motion to remand has been filed before this Court. Nevertheless, drawing on its equitable power, the Court remands the action to state court for further proceedings.[8] Since

---

**6.** Because of this Court's determination that the FSIA bars plaintiffs' action against Bartlett Diaz, the FSIA cannot form a basis for this Court's subject matter jurisdiction. Subject matter jurisdiction under the FSIA attaches only where an exception to its immunity provisions applies. If the Court had determined that Bartlett Diaz was subject to suit under the FSIA, then this Court would have the power, in the exercise of its discretion, to assert pendent party jurisdiction over the remaining defendants, where the alleged wrongdoing arose from the same common nucleus of operative facts at issue in the claims against Bartlett Diaz. *Tri-Ex Enters., Inc. v. Morgan Guaranty Trust Co.,* 596 F.Supp. 1, 5 (S.D.N.Y.1982).

**7.** Even where an alien has been sued, section 1332 requires complete diversity among the litigants. *See Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350, 354 (5th Cir.1982) (no diversity jurisdiction where Louisiana resident sued Louisiana corporation and foreign corporation); *Rubinfeld v. Bahama Cruise Line, Inc.,* 613 F.Supp. 300, 302 (S.D.N.Y.1985) (no diversity jurisdiction where New York resident sued Cayman Islands company having principal place of business in New York); *Dadzie v. Leslie,* 550 F.Supp. 77, 79 (E.D.Pa.1982) (diversity statute requires complete diversity "even where aliens are parties to the action").

**8.** In *Carnegie-Mellon Univ. v. Cohill,* — U.S. —, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) the Supreme Court approved the remand of a case to state court under circumstances where the federal removal statute did not expressly authorize remand. "Because in some circumstances a remand of a removed case involving pendent claims will better accommodate the[ ] values [of economy, convenience, fairness, and comity] than will dismissal of the case, the animating principle behind the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is inappropriate." *Id.* 108 S.Ct. at 619.

the Frankenburg defendants played no role in the removal of this action from state court, a dismissal for lack of subject matter jurisdiction as to them would not serve the interests of justice.  It is likewise appropriate for plaintiffs' claims against defendant Cordero de De la Madrid to be decided by a state court, since this Court has determined that her alleged conduct was carried out exclusively in a private capacity.  In state court defendant Cordero de De la Madrid will have the opportunity to assert her defenses of Head of State immunity, lack of personal jurisdiction, deficiencies in service of process, statute of limitations, and any other defenses she may wish to raise.

## CONCLUSION

Defendant Bartlett Diaz is immune from suit pursuant to the provisions of the FSIA.  Accordingly, Bartlett Diaz is dismissed from this action.  The Court lacks subject matter jurisdiction over the remaining claims, and accordingly remands the action to state court.  Defendants' request for sanctions pursuant to Rule 11, Fed.R. Civ.P., is denied.

It is so ordered.