**HORSEHEAD RESOURCE DEVELOPMENT COMPANY, INC., Plaintiff,**

v.

**B.U.S. ENVIRONMENTAL SERVICES, INC., B.U.S. Berzelius Umwelt–Service AG, Lobbert Holding GmbH, Rolf Kola, Jurgen Tietz and Guenter Okon, Defendants.**

No. 95 Civ. 5802 (SAS).

United States District Court,
S.D. New York.

Feb. 22, 1996.

---

Andrew J. Levander, Shereff, Friedman, Hoffman & Goodman, New York City, for plaintiff.

James D. Herschlein and Richard E. Bierman, Kaye, Scholer Fierman Hays & Handler, New York City, for defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff, Horsehead Resource Development Company, Inc. ("Horsehead"), is a publicly-owned environmental services company specializing in inorganic hazardous waste removal. Defendant B.U.S. Berzelius Umwelt–Service AG ("BUS AG") is a German corporation similarly engaged in the business of environmental services. Defendant B.U.S. Environmental Services, Inc. ("BUS") is a wholly-owned subsidiary of BUS AG, apparently formed solely to acquire and hold shares of stock in Horsehead. Defendant Lobbert Holding GmbH ("Lobbert Holding") is a German waste services company. Defendant Rolf Kola ("Kola") is a member of the Board of Directors and Vice President of BUS, as well as a member of the Executive Board of BUS AG. Defendant Jurgen Tietz ("Tietz") is the Secretary of BUS and the Vice President of BUS AG. Defendant Guenter Okon ("Okon") is Chairman of the Board of Directors, President and Treasurer of BUS and Speaker of the Executive Board of BUS AG.

Horsehead brings this suit to compel Defendants to "make the full and complete disclosure required by law" in their Schedule 13D filing as required by the securities law.[1]

---

1. Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (1981), requires:

On September 13, 1995, Defendants BUS, BUS AG, Kola and Okon moved to dismiss the Complaint as moot pursuant to Fed. R.Civ.P. 12(b)(6). *See Avnet, Inc. v. Scope Ind.*, 499 F.Supp. 1121, 1125 (S.D.N.Y.1980) (where a second amendment was sufficient to cure alleged omissions in an earlier Schedule 13D the action was moot). Defendant Lobbert Holding, served after the other Defendants, makes the same motion.

## I. *Standard*

In considering a motion to dismiss, the Court must presume all factual allegations in the complaint to be true. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994). Moreover, the Court must draw all reasonable inferences in favor of the non-moving party. *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). Only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" should a court grant a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## II. *Facts*

The gravamen of this Complaint is that Defendants filed false and misleading information with the Securities and Exchange Commission ("SEC") regarding the control and background of the foreign owners of a 44.8% block of Horsehead stock. Complaint ¶ 1. On August 3, 1990, BUS AG, BUS and Metallgesellschaft AG ("MG")[2] filed a Schedule 13D in accordance with § 13(d) of the Securities Exchange Act, 15 U.S.C. § 78m(d). *Id.* at ¶ 11. On July 8, 1994, Amendment No. 1 to the Schedule 13D was filed with the SEC disclosing that MG owned approximately 53% of BUS AG. *Id.* at ¶ 12.

At some point between July 8, 1994 and March 3, 1995, MG transferred approximately a 15% interest in BUS AG and thereupon ceased to be its majority shareholder. *Id.* at ¶ 13. However, MG neglected to file an amendment to Schedule 13D disclosing that it had reduced its controlling interest in BUS AG, nor did it disclose to whom it had transferred a substantial block of its BUS AG stock. *Id.*

### Amendment No. 2

On March 3, 1995, MG sold its remaining 38% interest in BUS AG to Lobbert Holding. Complaint ¶ 14. On April 18, 1995, BUS AG and BUS filed Amendment No. 2 to Schedule 13D ("Amendment # 2") regarding the March 3 transaction. *Id.* at ¶ 15. Amendment # 2 stated, *inter alia*, that BUS and BUS AG collectively controlled 44.8% of the total number of shares of Horsehead common stock outstanding on April 17, 1995. *Id.* While Amendment No. 2 admitted that MG had sold its BUS AG stock to Lobbert Holding, it denied that Lobbert Holding now held a controlling interest in BUS AG. *Id.*, Ex. A at 4.

On August 7, 1995, Plaintiff commenced this suit. Plaintiff asserts that Amendment # 2 "is intentionally or at least recklessly false and misleading in that it makes untrue statements of material fact and fails to state material information." *Id.* at ¶ 23. Furthermore, Plaintiff alleges that the Defendants' false filing was deliberate and was designed not only to hide Lobbert Holding's controlling interest in BUS AG, but also to deprive Horsehead and the public of critical informa-

---

Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class … , is directly or indirectly the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, … file with the Commission[:]

(A) the background, and identity, residence, and citizenship of, and the nature of such beneficial ownership by, such person and all other persons by whom or on whose behalf the purchases have been or are to be effected; …

(D) the number of shares of such security which are beneficially owned, and the number of shares concerning which there is a right to acquire, directly or indirectly, by (i) such person, and (ii) by each associate of such person, giving the background, identity, residence, and citizenship of each such associate[.]

In addition, Section 13(d)'s disclosure requirements "must be read together with S.E.C. Rule 12b–20, which requires disclosure of 'such further material information' as is necessary to make the statements required by other rules not misleading in light of the circumstances." *Arvin Indus. v. Wanandi*, 722 F.Supp. 532, 538 (S.D.Ind.1989).

2. MG was at that time the parent company of BUS AG.

tion regarding Lobbert Holding's interest in BUS AG and Lobbert Holding's business practices. *Id.* at ¶ 19.

Plaintiff alleges that Amendment # 2 is deficient in at least four material respects. First, the amendment failed to disclose Lobbert Holding's controlling interest in BUS AG. Second, the amendment falsely stated that Lobbert Holding did not hold a controlling interest in BUS AG. Third, Amendment # 2 failed to disclose that Lobbert Holding had recently violated a number of German environmental regulations and/or laws. Fourth, Amendment # 2 failed to disclose information responsive to items 2–6 of Schedule 13D as to Lobbert Holding. *Id.* at ¶ 24.

*Amendment No. 3*

On September 11, 1995, approximately one month after Horsehead filed its Complaint, BUS and BUS AG filed Amendment No. 3 to Schedule 13D ("Amendment # 3"), intending to "cure" the earlier deficiencies and to thereby moot the present action by disclosing all information regarding Lobbert Holding required under § 13(d). Amendment # 3, for example, admitted that Lobbert Holding owns at least 52% of the common stock of BUS AG, although only 40% of its voting stock. Furthermore, Amendment # 3 specifically disclosed Horsehead's complaint and the allegations made regarding the alleged non-disclosures:

> On August 7, 1995, [Horsehead] filed a complaint in the United States District Court for the Southern District of New York against B.U.S., B.U.S. AG, Lobbert, Rolf Kola, Jurgen Tietz and Guenter Okon (the "Complaint") alleging, among other things, that the Schedule 13D is false and misleading. While the reporting persons herein do not believe that there is any merit to the allegations made in the Complaint, this Amendment No. 3 is being filed to remove any possible controversy with respect to such allegations.

In accord with the requirements of Schedule 13D, Amendment # 3 states that neither Lobbert Holding nor any member of the Lobbert family

> (a) has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors), or (b) has been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding is or was subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violations with respect to such laws.

Amendment # 3 at 6.

Plaintiff, however, contends that Amendment # 3 failed to cure all the deficiencies in the Defendants' prior false and misleading disclosures. First, Amendment # 3 was not a certified statement from any member of the Lobbert Family,[3] "the only persons with actual knowledge of the relevant facts." Second, the amendment failed to annex a copy of the complaint or even recite all of its pertinent allegations, including and specifically with regard to the alleged environmental violations ("[Horsehead] shareholders are entitled to know about the Lobbert Family's abysmal environmental record." Pl.Mem. in Op. to BUS' Motion to Dismiss at 3). Third, Amendment # 3 did not state that Lobbert Holding now controlled BUS AG. Fourth, the amendment failed to provide the true percentage of stock ownership held by Lobbert Holding and/or the Lobbert Family in BUS AG. In support of the allegations regarding the reported environmental violations, Plaintiff submitted the affidavit of William E. Flaherty, Chairman of the Board of Horsehead, which sets forth specific details concerning the Lobbert Family's stock ownership in BUS AG and Lobbert Holding's violations of German environmental laws.[4]

---

3. Lobbert Holding is wholly owned by Dieter, Johannes, Britta and Maria Lobbert (collectively referred to as "Lobbert Family").

4. The gist of these allegations are as follows: In 1994, the Lobbert Family's activities in the former East Germany were the subject of a report on the German television news program *Kontraste*. *Kontraste* reported that a company con-

trolled by the "Lobbert Brothers" was responsible for "clouds of toxic chlorine and appalling smells of hospital garbage [that] had mobilized the head of the city government of Munster and its district attorney's office." Flaherty Aff., Ex. A at 1. Another Lobbert-controlled company was fined 30,000 German Marks by the government for "illegal waste transport." *Id.* at 2. *Kontraste*

*Amendment No. 4*

In response to these allegations, Defendants filed Amendment No. 4 ("Amendment # 4") to their Schedule 13D on October 30, 1995. Defendants now argue once again that Amendment # 4 cures the stated deficiencies in the previous filings and moots the action. Specifically, Amendment # 4 is signed by Lobbert Holding, as well as its four individual shareholders. Amendment # 4 attaches Horsehead's complaint as an exhibit. Finally, Amendment # 4 reiterates the fact that Lobbert Holding has never been convicted of any crime—including criminal convictions for environmental matters.

### III. *Analysis*

Plaintiff asserts two claims in its Complaint. First, that Defendants have violated § 13(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78m(d), and Rules 240.13d–101 and 420.12b–20, by failing to disclose the above-mentioned material information in its Schedule 13D filings. Second, that Defendants Lobbert Holding, Kola, Tietz and Okon (collectively referred to as the "non-BUS Defendants") have violated § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for the same alleged violations, as controlling persons of BUS AG. Defendants have moved to dismiss the Complaint in its entirety.

■ As an initial matter, all parties have submitted affidavits to the Court to be considered on the motion to dismiss. While evidence outside the pleadings is normally not considered in a motion to dismiss, *Cloward v. Columbia Univ.*, 888 F.Supp. 21, 23 (S.D.N.Y.1995), the Court may consider items outside the pleadings on a mootness defense, just as it may on a motion to dismiss on jurisdictional grounds. *See Gilbert, Segall and Young v. Bank of Montreal*, 785 F.Supp. 453, 461 (S.D.N.Y.1992) ("In considering a factual attack on the jurisdictional allegations of the complaint, i.e., the truth of the jurisdictional facts alleged by the plaintiff is challenged, a court may receive any competent evidence, such as affidavits, in order to determine the factual dispute"); *Kline v. Kaneko*, 685 F.Supp. 386, 389 (S.D.N.Y.1988) ("A court considering a motion to dismiss is usually confined to the facts in the pleadings, but "[o]n a motion attacking the court's jurisdiction, the district judge may resolve disputed jurisdictional fact issues," and may rely on affidavits as well as the pleadings.") (citation omitted). *See also Arvin Indus. v. Wanandi*, 722 F.Supp. 532, 540 (S.D.Ind. 1989) ("In ruling on a mootness defense, the Court can consider items outside the pleadings.").

### *The Section 13(d) Claim*

Section 13(d) requires any person acquiring a beneficial ownership of more than 5% of a class of registered stock in a company to make certain filings and disclosures with the issuer of the security, the exchange where the security is traded, and the SEC. Moreover, in an effort to ensure both the accuracy and adequacy of such information, the SEC's rules mandate that the § 13(d) information be contained in a certified statement "signed by each person on whose behalf the statement is filed or his authorized representative." S.E.C. Rule 13d–101, 17 C.F.R. § 240.13d–101.

■ Generally, once a subsequent 13D filing cures alleged omissions in prior filings, the § 13(d) claim alleging omissions must be dismissed as moot. *Treadway Cos. v. Care Corp.*, 638 F.2d 357, 380 (2d Cir.1980). However, the filing of an amendment merely disclosing the existence of adverse claims which allege falsities or omissions, without actually admitting the charges, may significantly circumvent the purpose of the disclosure requirements, and thus will not neces-

---

also reported that its own investigation had uncovered that yet another Lobbert-controlled company was unlawfully dumping special waste at ordinary "garbage dumps in Hennickendorf, in the Strausberg district, east of Berlin." *Id.* at 3.

In addition, the Flaherty affidavit contends that Lobbert-controlled companies have been prosecuted for serious violations of German envi-

ronmental regulations and/or laws in eight German cities, and provides the file number for each of these cases. *Id.* ¶ 6.

Finally, the Flaherty affidavit states that Dieter and Johannes Lobbert are believed to have been the subject of a number of German governmental investigations with regard to illegal or environmentally damaging waste disposal. *Id.* ¶¶ 7–8.

sarily result in dismissal of the action. This is because

> [m]aterial facts might often be concealed and omitted from initial 13D Statements, to be cured only by subsequent disclosure of adverse claims which allege the omissions but which are disputed by the disclosing party. As a result, the true facts would often remain obscured and hidden from investors.

*Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1501 (D.Del.1984).

All of the alleged deficiencies in the original 13D filings have been cured by further disclosure except the allegation that Lobbert Holding should be identified as a controlling shareholder of BUS AG, and that Lobbert Holding reveal its record of alleged environmental violations. All that remains is an analysis of whether the securities laws require disclosure of either of these alleged omissions.

### A. *Lobbert Holding as Controlling Shareholder*

■ The Complaint alleges that the Lobbert Family is the beneficial owner of 67.6% of the common stock of BUS AG and beneficial owner of 52% of the shares of the combined common and preferred stock of BUS AG. It further alleges that Dieter Lobbert admitted the Lobbert Family's 52% control of BUS AG to Horsehead on or about May 2, 1995. Complaint at ¶ 18. In support of its position, Plaintiff relies on Exhibit C of the Flaherty Affidavit, which is a chart allegedly prepared by an unidentified "leading German investment bank." The chart, which represents that the Lobbert Family controlled 52.01% of the combined common and preferred stock of BUS AG as of July 1, 1995, cites no source for this information.

In response to this allegation, Defendants assert in Amendments #3 and #4 that Horsehead is mistaken as to Lobbert Holding's interest, and that, in fact, although Lobbert Holding owns 52% of BUS AG's common stock, it owns only 40% of its voting stock. Amendment #4, for example, states that under § 140 of the German Stock Corporation Law, preferred stock (which normally has no voting rights) automatically becomes voting stock if the issuing corporation does not declare dividends to its preferred stockholders for two consecutive years. Because BUS AG did not declare a dividend for either 1993 or 1994, the automatic voting rights provision was officially triggered on February 3, 1995. This was the date that BUS AG released its audited financial statements for 1994, which showed no dividends declared for that year. This Amendment was individually signed by each member of the Lobbert Family, as well as by a representative of Lobbert Holding.

Defendants have presented certifications contained in Amendment #4 by Dieter Lobbert, Johannes Lobbert, Britta Lobbert, Maria Lobbert, Guenter Okon, Rolf Kola, Lobbert Holding GmbH, BUS AG, and BUS, as well as the sworn affidavit of Christoph Aupers, Lobbert's manager ("Aupers Aff."), all confirming Lobbert's shareholdings. The dilution of BUS AG's preferred stock pursuant to German Corporate law is confirmed in an accompanying affidavit of Jurgen Tietz, BUS AG's Vice President and general counsel ("Tietz Aff.").

Plaintiff responds that § 139 of the German Act on Stock Corporations does not *require* that preferred stockholders be granted no voting rights, but only that the corporation has the *option* to exclude such rights by the articles of incorporation.[5] Thus, with-

---

**5.** As translated in the Affidavit of Dr. Michael Witzel, presented by Plaintiff, the pertinent sections are as follows:

**Sec. 139**

*Nature*

(1) The voting right may be excluded for stock which carries the benefit of an additional payment at the distribution of the profit (preferred stock without a voting right).

(2) Preferred stock without a voting right may only be issued up to an aggregate nominal

amount equal to the aggregate nominal amount of the other stock.

**Sec. 140**

*Rights of the preferred stockholders*

(1) Preferred stock without a voting right grants those rights for the stock as pertain to every stockholder, except the voting right.

(2) If the additional benefit is not or not fully paid in a year and if the arrears are not paid up in the next year, together with the full benefit of that year, then the preferred stockholders have a voting right until the arrears

out specific indication that BUS AG's articles of incorporation authorize the granting of voting rights under such circumstances, the motion to dismiss must be denied.

The myriad certified statements, particularly those signed by the Lobbert family, provide convincing proof that Plaintiff is mistaken about the extent of Lobbert Holding's and the Lobbert Family's ownership of BUS AG stock. Amendments #3 and #4 to Schedule 13D have satisfied the interests protected by § 13(d) by both addressing— and correcting—Plaintiff's allegation that Lobbert Holding owns 67.6% of the Common Stock of BUS AG and 52% of the "combined Common and Preferred Stock" of BUS AG by providing all required disclosures. In light of all the evidence presented, it is not necessary for Defendants to make another filing merely to state that BUS AG's articles of incorporation authorize the granting of voting rights to preferred stockholders in the conditions present here.

Finally, Plaintiff presents one additional argument in support of its position. According to Dr. Michael Witzel, an attorney licensed to practice law in Germany ("Witzel Aff."), even if the voting right of preferred stock is excluded by BUS AG's articles of incorporation, the non-payment of dividends for two consecutive years does not necessarily create voting rights for the preferred stock. Witzel Aff. at § II ¶ 4. Witzel cites a complex German corporate law provision which provides that if the company has shown a profit which is sufficient for the added benefit, voting rights will not necessarily be granted.

Whether BUS AG properly withheld dividends and granted voting rights to preferred stockholders under German law is not an issue to be determined by this Court.

It should be obvious that this Court need not decide points of Italian or Swiss law, but only whether these foreign legal questions have been fully and fairly called to the attention of the [s]hareholders.

*Avnet, Inc. v. Scope Indus.,* 499 F.Supp. 1121, 1125 (S.D.N.Y.1980) (*citing Ronson Corp. v. Liquifin Aktiengesellschaft,* 370 F.Supp. 597, 608 (D.N.J.1974), *aff'd* 497 F.2d 394 (3d Cir.1974), *cert. denied,* 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 108 (1974)) (stockholders were properly informed of defendants' foreign law difficulties where each contested point of foreign law and the opinions of counsel for both defendants and plaintiff were described).

Based on an analysis of the Amendments and the affidavits, it appears Defendants' disclosures sufficiently satisfy the requirements of § 13(d). Thus Defendants' motion to dismiss on this ground is granted.

B. *The Alleged Environmental Violations*

■ Plaintiff argues that § 13(d) requires Defendants to disclose that Lobbert Holding and various members of the Lobbert family have been the subject of regulatory investigations in Germany relating to environmental matters, as well as the environmental violations themselves. This argument is premised on a belief that there exists a substantial likelihood that a reasonable investor in Horsehead would have found this omitted information significant in deciding whether to buy or sell Horsehead stock. This argument has merit. These alleged investigations have reportedly resulted in findings of violations of environmental laws and/or regulations in the recent past, including violations within the last five years. Because Horsehead is itself engaged in the business of inorganic hazardous waste resource recovery, a reasonable investor in Horsehead stock could very well agree that Defendants' failure to disclose the environmental violations represents a purposeful omission of material facts.

While § 13(d) contains no explicit requirement for a 13D filing to include a description of environmental violations, Rule 12b–20

have been paid up. In this case, the preferred stock shall also be considered for the calculation of a capital majority required by law or the articles of incorporation.

(3) To the extent the articles of incorporation do not determine otherwise, no claim to

the additional benefit in arrears arises due to the fact, and only subject to later resolutions on the distribution of profit, that the additional benefit is not or not fully paid in a year.

mandates the disclosure of further material information in order to make the required § 13(d) statements not misleading.[6] *Victory Markets, Inc. v. Nelson*, 81 Civ 1370 (HGM), 1982 WL 2278, *4 (N.D.N.Y. March 26, 1982). However, this Rule does not require filers to reveal information unrelated to § 13(d)'s mandated disclosures. *Kaufman & Broad, Inc. v. Belzberg*, 522 F.Supp. 35, 42 (S.D.N.Y. 1981) ("The rule does not . . . convert Section 13(d) into a mandate to disclose any and all material information, even if unrelated to the areas of disclosure required by Section 13(d)").

In *Avnet v. Scope Indus., supra*, the court dismissed a § 13(d) claim because defendant's second amendment to its Schedule 13D cured any alleged omissions and made plaintiff's claim moot. Relying on *Copperweld Corp. v. Imetal*, 403 F.Supp. 579, 606 (W.D.Pa.1975) and *Ronson Corp. v. Liquifin Aktiengesellschaft*, 370 F.Supp. 597, 608 (D.N.J.), *aff'd per curiam*, 497 F.2d 394 (3d Cir.), *cert. denied*, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 108 (1974),[7] the *Avnet* court held that the defendants were not required to state in their schedules that the disputed allegation—that Avnet, Inc. was an unregistered investment company—was actually true. Instead, disclosure of the *possibility* of the alleged fact, and the conflicting positions taken by the parties, was held to be sufficient:

> In sum, the purpose of the disclosure provisions of the securities laws is to see to it that the insider, management official, proxy solicitor, tender offeror or substantial shareholder, as the case may be, discloses to the investor the facts as truly believed by the discloser. *When, as here, the record demonstrates that there is a dispute as to the facts, the law requires only that the disputed facts and the possible outcomes be disclosed. This is the limit of the law unless there is reason to believe that the facts are not genuinely in dispute.*

*Avnet*, 499 F.Supp. at 1125 (emphasis added).

*Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482 (D.Del.1984) echoed this sentiment.

> The federal securities laws may require a party to disclose legal violations, and other legal consequences, resulting from the party's actions if such information is material to investors for reasons other than simply revealing the culpability of the actions. However, if the party in good faith disputes the violations, the party need only disclose the possibility of the violations. In general, a party's disclosure obligations under the securities laws extend no further than good faith disclosure of all material information within the party's scope of knowledge. A party may not be held hostage under the securities laws in order to inform investors with complete certainty of all the legal implications and consequences of the party's actions. Moreover, the disclosure provisions of the securities laws may not be used as an indirect vehicle for litigating any and all of a party's sins.

*Warner*, 581 F.Supp. at 1502 (citations omitted). *See also Krauth v. Executive Telecard, Ltd.*, 890 F.Supp. 269, 288 (S.D.N.Y.1995) ("Where, as here, there is a dispute, the securities laws require disclosure of the disputed facts and possible outcomes.").

A requirement that Lobbert Holding declare whether it has violated environmental laws would overcome the carefully crafted balance of interests set forth in *Avnet* and its progeny. Defendants cannot be compelled to

---

**6.** Rule 12b–20 states in full: "In addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading." 17 C.F.R. § 240.12b–20.

**7.** In *Copperweld*, the tender offeror, Imetal, disclosed in its offer the possibility that antitrust violations might result if its offer were unsuccessful. Although Copperweld argued that "Imetal should have described the nature and seriousness of the antitrust implications in its tender offer," and "admitt[ed] its guilt," the court held that "only the possibility of an antitrust violation need be disclosed." *Copperweld*, 403 F.Supp. at 606.

Similarly, in *Ronson*, which also involved a tender offer, the court held that the offeror's 14D statement describing the plaintiff's claims against it and the conflicting opinions of counsel for each side on those points was sufficient. *Ronson Corp.*, 370 F.Supp. at 608.

declare that they have violated the law before they have actually been convicted of crimes. The same can be said for "investigations." A person or corporation has no duty to predict the outcome of all investigations into their actions or behavior. Indeed, often such investigations are conducted without the subject's knowledge. It is not uncommon for investigations to conclude with a finding that the allegations are unfounded.

However, the situation is different once a criminal case has been brought. Obviously, if the criminal case is closed without a conviction, no disclosure of the suit is necessary in accord with Schedule 13D's explicit requirements. This may not be true for *ongoing* criminal cases. When, as here, the alleged criminal activity specifically relates to the business conducted by the company whose stock is held, disclosure of such ongoing criminal matters is deemed to be material to current and prospective shareholders. As no evidence has been presented to suggest that the identified criminal cases against Lobbert Holding and the Lobbert Family have been closed, Defendants must either report that such criminal environmental lawsuits are continuing (along with the possible outcomes should conviction occur), or present incontrovertible evidence that they have, in fact, been closed without convictions.

Disclosure of existing criminal charges is not always required. Here, the alleged crimes (environmental violations) specifically relate to the business conducted by the Plaintiff. Obviously, shareholders of an environmental waste control company would find material the knowledge that the company's largest shareholders are being tried for environmental law violations. For this reason, and this reason only, such information is considered "material" to current and prospective shareholders. Thus, the motion to dismiss is denied with respect to this allegation. This holding does not require Schedule 13D filers to disclose the existence of criminal charges unrelated to the business interests of the company whose stock it holds.

## IV. Claims under § 20(a) of the Exchange Act

Plaintiff's second claim for relief seeks to impose liability on the non-BUS Defendants as "controlling persons" under § 20(a) of the Exchange Act, for the alleged violation of § 13(d) discussed above.[8] The purpose of the controlling person provision is to impose secondary liability on one who controls a violator of the securities laws and who fails to show that he acted in good faith. *See Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*, 735 F.Supp. 587 (S.D.N.Y. 1990). Under this section, liability can arise only if a primary violation of the securities laws by the controlled entity has been established.

Because the motion to dismiss has been denied with respect to the Schedule 13D disclosure of ongoing criminal actions on alleged environmental law violations, this count cannot be dismissed at this stage of the proceedings.

## V. Conclusion

For the foregoing reasons, the motion to dismiss is denied.

SO ORDERED.

---

8. 15 U.S.C. § 78t states, in pertinent part:
   (a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.